Burks, J.
This is a controversy between the representatives of the first and second endorsers of a negotiable note. The appel-lee, Harman, as the surety on an injunction bond of White, the second endorser, was compelled by suit to pay the amount of the note to the holder, and he filed his bill to be substituted for indemnity to the rights of White, who was insolvent, against the personal representative of Chrisman, the first endorser.
An examination of the record satisfies me that both of these endorsers had become bound to the holder for the payment of this note. The note was not paid at maturity by the makers, was duly protested for non-payment, and each endorser had due notice of the dishonor. This is shown by the notarial certificate filed with Harman’s bill.
The circuit court gave Harman a ’^decree against the personal representative of Chrisman according to the prayer of his bill.
It is objected in the first place, by the appellant’s counsel, that this was not a case for the application of the equitable doctrine of subrogation. I do not think the objection well founded. The endorsers were severally and successively bound by their respective endorsements, and inter se Chrisman was primary debtor and White a quasi surety. If White, as endorser, had paid the note to the holder, it would not have been discharged or extinguished, but he would have had the right to hold it as a subsisting security against the prior endorser for the amount paid. A bill is not discharged and finally extinguished until paid by or on behalf of the acceptor, nor a note until paid by or on behalf of the maker. Byles on Bills, side p. 220.
Harman, as surety on the injunction bond, became bound for the payment of the note on which a decree had been rendered against White, and when and as soon as payment was made by him he became entitled in equity to the benefit of all the securities held by White, his principal, for his indemnity, and to be substituted in equity to all the remedies of White to enforce such securities. The note, although thus paid, was not extinguished, but. continued a security for the amount paid, to which Harman became entitled in equity to resort for his indemnity. This conclusion results from the equitable doctrine of subrogation, and is supported, I think, by the authorities.
But it is further contended by the appellant’s counsel, that even if a court of equity had jurisdiction to grant relief upon the principle of subrogation, yet Harman, standing in White’s shoes, is concluded by the decrees of November, 1869, and June, 1874. The doctrine of res judicata and estoppel generally is stated at large by *Mr. Conway Robinson, in the 7th volume of his Practice, from page 1 to page 482. The rule, as stated by Mr. Justice Field, of the supreme court of the United States, will suffice for this case. In Hughes v. U. States, 4 Wall. U. S. R. 236, he says: “In order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit was dismissed for defect of the pleadings, or parties, or a misconception of the form of proceeding, or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.”
Again, in a still more recent opinion, the same learned judge says: “It is undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, as for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment was rendered, the whole subject matter of the action will be at large and open to a new contention, unless the uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible. *****
“According to Coke, an estoppel must be *509 ‘certain to every intent’; and if upon the face of a record, anything *is left to conjecture as to what was necessarily involved and decided, there is no es-toppel in it when pleaded, and nothing conclusive m it when offered as evidence. Russel v. Place, 94 U. S. R. 4 Otto, 606.
Applying the law thus laid down, 1 am of opinion that neither the decree of November, 1869, nor the decree of June, 1874, constitutes any bar to the relief which was prayed and granted in this case.
‘The first named decree was made in a suit brought by the holder of the note against the makers and the two endorsers, equitable jurisdiction being based on the ground that the note was lost. Chrisman answered the bill and denied his liability as endorser. White made default, and at the hearing of the cause, no evidence being offered by the complainant to contradict Chrisman’s answer, the bill was dismissed as to him and a decree entered against the makers and White for the amount of the note. No question was raised or decided between the endorsers as to their respective rights and obligations touching the note. The litigation was wholly between the complainant in the bill on the one side, and the defendants on the other, nor was any such case made either by the pleadings or proofs as warranted any decree between these defendants. After this decree, the lost note was found, and with it the notarial certificate, from which it appeared that the note had been regularly protested for non-payment, and that each endorser had due notice. Thereupon White filed his bill against the holder of the note, the makers and Chrisman, alleging the finding of the note and the facts connected with it, and praying that the decree of November, 1869, be reviewed and reversed, or at least modified so far as to hold Chrisman liable as prior endorser and compel him to make payment of the note to the exoneration and relief of White, who was only secondarily bound. *Chrisman answered and demurred to the bill in the same pleading, and at the hearing the bill was dismissed. In the decree no mention is made of the demurrer as distinguished from the answer, for the reason, no doubt, that the demurrer was regarded and treated as of the same pleading with the answer. Six causes of demurrer were specially assigned,. and most of them, as will appear on examination, do not touch the merits of the. controversy. For example, one cause assigned is, that the bill was filed without the leave of the court; another, that the decree complained of was not final as to the complainant; and another, that the decree had never been obeyed and performed by the complainant; by which was doubtless intended that the complainant had not paid the sum (the amount of the note) decreed against him, and therefore his bill was prematurely filed.
It does not appear by the record upon what grounds the bill was dismissed, whether upon the merits or upon some of the special causes of demurrer not involving the merits; and as no extrinsic evidence was furnished in the subsequent suit, if indeed any could be in such a case, showing the precise point involved and decided in the former suit, according to the authority of Russel v. Place, supra, “the whole subject matter of the action was at large and open to a new contention.”
In this “new contention,” T am satisfied that justice has been done between the parties, and I am of opinion to affirm the decree of the circuit court.
Decree affirmed.